Filed 12/11/24 (unmodified opn. attached)

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ALEXA WAWRZENSKI, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> UNITED AIRLINES, INC., <br><br> Defendant and Respondent. | B327940 <br><br> (Los Angeles County Super. Ct. No. 20STCV43930) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br> (No change in appellate judgment) |

THE COURT:

It is ordered that the opinion filed October 22, 2024 and modified November 12, 2024 be modified as follows:

At the end of the last paragraph of section B(3) of the Discussion and after the citation: (*Riggs v. AirTran Airways, Inc.* (10th Cir. 2007) 497 F.3d 1108, 1117; see *Graham v. Long Island R.R.*, *supra*, 230 F.3d at pp. 42-43 [a rational jury could find the plaintiff and another employee were similarly situated where they engaged in different misconduct but were subject to the

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts F and G of the Discussion.

same conditions for dismissal].), add as footnote 13 the following footnote, which will require renumbering of all subsequent footnotes:

13. United argues in a petition for rehearing that our consideration of comparators with different supervisors is "deductively unsound" because the jury could not infer Mark had a discriminatory motive for firing Wawrzenski without evidence he knew how other supervisors disciplined similarly situated employees. But as the court in *Earl v. Nielsen Media Research, Inc.*, *supra*, 658 F.3d 1108 recognized, the "'same supervisor' requirement" does not apply where, as here, the plaintiff and the comparators have "to follow the same policies and procedures" and the employer coordinates disciplinary actions "on a national level in an effort to ensure they are subject to consistent standards." (*Id.* at p. 1115.) Indeed, Mark testified that before terminating Wawrzenski's employment he consulted with a management team to confirm he was applying "company policies in a consistent manner . . . across the company." Viewing this evidence in the light most favorable to Wawrzenski, a jury could find her similarly situated in all material respects to the comparators, even though she and the comparators may have had different supervisors.

Respondent's petition for rehearing is denied. There is no change in the appellate judgment.

_____
MARTINEZ, P. J.          SEGAL, J.          FEUER, J.

2

Filed 10/22/24; modified and certified for partial pub. 11/12/24 (order attached) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALEXA WAWRZENSKI, | B327940 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV43930) |
| v. | |
| UNITED AIRLINES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Judge. Reversed with directions.

Clarkson Law Firm, Glenn A. Danas, Katelyn M. Leeviraphan, Ashley M. Boulton; Shegerian & Associates, Carney Shegerian, Mahru Madjidi, and Anthony Nguyen for Plaintiff and Appellant.

Reed Smith, Michele Haydel Gehrke, Kasey J. Curtis, and Brian K. Morris for Defendant and Respondent.

# INTRODUCTION

Alexa Wawrzenski was a flight attendant employed by United Airlines, Inc.  United investigated and ultimately fired her for having a social media account featuring pictures of herself in uniform and wearing a bikini, with a link to a subscription-based account advertised as providing "[e]xclusive private content you won't see anywh[ere else]."  Wawrzenski sued United, alleging that she endured years of gender discrimination and harassment, that United retaliated against her for complaining about the discrimination and harassment by terminating her employment, that United's investigation into her social media and her termination discriminated against her as a woman, that United failed to prevent its employees' misconduct, and that United intentionally caused Wawrzenski emotional distress.

United moved for summary judgment or in the alternative for summary adjudication on all causes of action and on Wawrzenski's claim for punitive damages.  The trial court granted United's motion in its entirety, and Wawrzenski appealed from the ensuing judgment.

We conclude the trial court erred in granting United's motion for summary adjudication on Wawrzenski's causes of action under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA)).[1]  We also conclude, however, Wawrzenski forfeited her challenge to the trial court's rulings on her causes of action for retaliation under Labor Code section 1102.5, wrongful termination in violation of public policy,

---

[1]     Undesignated statutory references are to the Government Code.

2

and intentional infliction of emotional distress by not challenging one of the grounds for those rulings. And we conclude Wawrzenski forfeited her argument the trial court erred in granting United's motion for summary adjudication on her claim for punitive damages by failing to cite any evidence in support of her contentions on appeal. Therefore, we reverse the judgment and the order granting United's motion for summary judgment. We direct the court to enter a new order denying United's motion for summary judgment, denying United's motion for adjudication on Wawrzenski's causes of action under FEHA, and granting the motion on her other causes of action and her claim for punitive damages.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *United Hires Wawrzenski as a Flight Attendant Subject to Certain Employment Policies*

Wawrzenski began working for United in October 2015 as a flight attendant based in Los Angeles. Throughout her employment Wawrzenski was a member of the Association of Flight Attendants, and a collective bargaining agreement prescribed the terms and conditions of her employment.

As a United employee, Wawrzenski benefitted from and was subject to certain employment policies. United's Working Together Guidelines "explain what actions are expected of [employees] and . . . communicate a clear understanding of what it means to be employed by United." The Guidelines include four categories: dignity and respect, honesty, professionalism, and responsibility. To promote "dignity and respect," the Guidelines state: "We're committed to creating a workplace free from

3

harassment and discrimination (treating someone less favorably). We defend our employees from harassment and discrimination based on their . . . gender . . . or any other protected characteristic under applicable law." The Guidelines further state "[a]ny offensive behavior or discrimination (verbal, visual or physical) directed toward a person because of any protected characteristic violates this policy" and subjects employees to "corrective action." The Guidelines encourage employees to "report concerns promptly until resolved" and to consider reporting offensive workplace behavior to "a member of [their] management team," the human resources department, or United's Ethics and Compliance Helpline. United prohibits retaliation against employees for reporting misconduct.

United also has social media guidelines that apply to employees' social networking activities while "on or off the job, including social networking you use without a name or under a false name." The social media guidelines encourage employees to use "good judgment" and to ensure posts have "a positive effect on United's business interests and reputation." Photographs of employees in uniform must comply with United's uniform standards, which ensure flight attendants' "look is consistent for every customer." For female flight attendants, the length of a skirt or dress "may not exceed [one] inch above or [one] inch below the crease of the back of the knee."

Finally, United's Code of Ethics and Business Conduct includes policies regarding conflicts of interest. The Code defines a conflict of interest as "any situation or activity that involves or appears to involve a conflict between [an employee's] personal or financial interests and United's interest." Examples of potential conflicts of interest include "outside employment." The Working

4

Together Guidelines on honesty state United expects employees to "avoid conflicts of interest and the appearance of them."

      B.     *Supervisors and Coworkers Comment on Wawrzenski's Body and Uniform*

Wawrzenski describes her "body type" as having a very small waist in proportion to her lower body and "larger hips." She claims that throughout her employment she experienced harassing, derogatory, and objectifying comments about her body and the way she looked in her uniform. The types of comments she heard "several times a month" included "offensive jokes" about her "'breaking necks'" of male employees who looked at her, remarks about her "'butt,'" and questions about where she had her "'surgery done'" and how much she paid for "her body." Wawrzenski said that "at times" she experienced "an unwanted sexual advance."

For example, in May 2016 manager Marie Nakasone "cleared" Wawrzenski to board a flight, but a supervisor, Betsy Gallo, stopped Wawrzenski and said, "Your body looks inappropriate in the uniform."[2] Nakasone later informed Wawrzenski that Gallo issued Wawrzenski an "'appearance infraction.'"

Nakasone met with Wawrzenski, a supervisor, and a union representative. At the meeting, Wawrzenski wore the same dress uniform she wore the day Gallo objected to Wawrzenski's appearance, and Nakasone said Wawrzenski's dress complied with the uniform policy. Wawrzenski complained that Gallo's comment was "sexist" because it was directed at her body and

---

[2]     Flight attendants report to a supervisor, who reports to a manager, who reports to a director at each base of operations.

5

that she was subject to greater "scrutiny" than male flight attendants, though she provided no evidence for the latter claim. Nakasone ended the meeting, and according to Wawrzenski, United did not investigate her complaint.

In July 2016 Nakasone "scolded" Wawrzenski for wearing a dress that was too short and said Wawrzenski's dress "'rides up'" when she walks. Wawrzenski demonstrated for Nakasone that her skirt length complied with United's uniform policy. Nakasone replied Wawrzenski had "'hips'" and suggested Wawrzenski wear a different uniform to avoid "running into the issue with anybody else." Nakasone provided Wawrzenski a size 8 "loaner uniform" to replace the uniform Wawrzenski was wearing, which was a size 2 or size 4.

In late 2016 or 2017 manager Gail Korn asked Wawrzenski to change her uniform when Wawrzenski had only 15 to 20 minutes left on an "airport alert" shift (= a shift where the flight attendant is waiting to see if he or she is needed on a flight). Without explanation, Korn asked Wawrzenski to go see supervisor Soledad Serrano-Cobo, who accompanied Wawrzenski to a restroom with a loaner uniform. Wawrzenski changed into the loaner uniform, which she claims was identical to the uniform she had been wearing. Wawrzenski said that she complained to Serrano-Cobo that making her change was "sexist," but that Serrano-Cobo did not respond.

Also in 2017 a pilot treated Wawrzenski differently from male flight attendants by "scolding" her for her "appearance." According to Wawrzenski, the captain originally complained about her small stud earrings, but after most passengers had deplaned, the captain "blocked" Wawrzenski's way and criticized

her performance.  A lead flight attendant stepped in and said Wawrzenski performed her job well.

In late 2019 a gate agent tried to delay a flight to allow a supervisor to approve Wawrzenski's appearance.  A coworker heard the gate agent say, "'the little blonde, white girl . . . . Where did she come from, the school of Kardashian?  She needs to get her money back for her body.'"  No one came to assess Wawrzenski's appearance, but Wawrzenski complained to Chelsea Nunn about the incident.

In late 2019 Nunn called Wawrzenski after receiving a report from a gate agent supervisor that Wawrzenski was not in uniform for a flight to Australia.  Wawrzenski told Nunn she wore her "black V-neck" uniform, and Nunn dropped the inquiry. Wawrzenski complained to Nunn during the call that she was being "targeted" for uniform (non)compliance because she was female.  She said "males weren't being subjected to the same scrutiny and level of treatment as females."  Nunn told her that she was a "young, attractive female," that Nunn sees similar behavior "at the base and to kind of 'get used to it,'" and that "'this is United.'"  Nunn "conveyed" that Wawrzenski would experience "a lot of hate" because she was young and attractive. Wawrzenski told Nunn "this was sexist, and this was completely unfair, and it makes coming to work miserable because of the unequal treatment between males and females, and [Nunn] just kind of sighed."

In early 2020 a male flight attendant said to Wawrzenski in the back of a plane, "'It's not every day I get to work with a pretty girl.'"  The male flight attendant asked her, "'Is your butt real?'" and "'How did you get a butt like that?'"  Wawrzenski complained to the lead flight attendant, who reassigned

7

Wawrzenski to the front of the plane. Around the same time, a coworker on a different flight told Wawrzenski that another flight attendant "was saying negative things" about how Wawrzenski looked "as a female" and that Wawrzenski should be "careful" because she might unwittingly seduce a male passenger in first class who was traveling with another woman. It is unclear whether Wawrzenski told her supervisor or anyone else in management about these incidents.

In March 2020 two flight attendants on a "deadhead" flight (= a flight that transports crew members to another destination for different flight)[3] accused Wawrzenski of dressing inappropriately. Wawrzenski was wearing black "golf type pant[s]" and a "regular black t-shirt with a crewneck sweater," an outfit she had worn on multiple deadhead flights. The flight attendants "made" her change into jeans. Shortly after this incident, Nunn called Wawrzenski and said she had received a complaint Wawrzenski had worn a "crop top" showing her stomach on a deadhead flight. Wawrzenski told Nunn what she actually wore, and Nunn "dropped the issue." Wawrzenski complained to Nunn the "level of . . . targeting" seemed to be escalating. In that conversation or a later one Wawrzenski told Nunn that she was "being 'discriminated' against and 'harassed' because [she] was a female and because of [her] female body" and that United was "not enforcing policies consistently between males and females." To Wawrzenski's knowledge, United never investigated her complaints.

---

[3]     See *Bernstein v. Virgin America, Inc.* (N.D.Cal. 2017) 227 F.Supp.3d 1049, 1056 (the time a flight attendant spends traveling as a passenger "on a flight to arrive at an airport for an assigned flight" is called "'deadheading'").

C.   *United Investigates Wawrzenski's Social Media*
     *Accounts*

On June 11, 2020 United's Ethics and Compliance office received an anonymous message about Wawrzenski's Instagram account. The message stated, "I came across this profile on Instagram, Flight Attendant is using her platform to get people to pay for x rated website, she's in United uniform in her photos and next to them are photos almost naked obviously soliciting." The message included three screenshots. The first showed the homepage for Wawrzenski's Instagram account, which included a Linktree link[4] connecting users to Wawrzenski's other social media accounts, and eight photographs of Wawrzenski. Among the eight photographs were two of Wawrzenski wearing a United flight attendant uniform and six of her wearing a bikini, hosiery, or tops showing cleavage. The second screenshot showed an Instagram post of Wawrzenski in a hotel room wearing a United flight attendant uniform. The third screenshot showed the homepage for Wawrzenski's OnlyFans account,[5] accessible

---

[4]   "Linktree allows you to create a personalized and customizable page that houses all the important links that you want to share with your audience. It's a link-in-bio solution that can be used on social platforms like Instagram . . . ." (<https://linktr.ee/help/en/articles/5434130-what-is-linktree> [as of October 21, 2024], archived at <https:perma.cc/B87M-7-AQA>.)

[5]   OnlyFans is "a 'social media and creation platform through which consumers subscribe to original content uploaded by OnlyFans creators.'" (*Muto v. Fenix International Limited* (C.D.Cal., May 2, 2024, No. 5:22-cv-02164-SSS-DTBx) 2024 WL 2148734, at p. 1, cleaned up; see *Woodson v. McCoy*

9

through the Linktree link on Wawrzenski's Instagram account. Wawrzenski's OnlyFans homepage stated, "Exclusive private content you won't see anywh[ere else]," with a link to "More info." Wawrzenski's OnlyFans homepage advertised access to her OnlyFans content for a monthly fee of $19.99. The anonymous message did not include any content from Wawrzenski's OnlyFans account to confirm whether it included "x rated" material.

In response to the anonymous message, United assigned Los Angeles Inflight Supervisor Peter Mark to investigate. On June 30, 2020 Mark issued Wawrzenski a letter of investigation, as required by the collective bargaining agreement. The letter stated a meeting scheduled for July 2, 2020 would investigate "correspondence received by United's Ethics and Compliance Office about [Wawrzenski's] posting suggestive photographs on [her] public Instagram account and soliciting subscriptions to [her] private content site for a fee." The letter said Wawrzenski appeared in her United uniform in some of the photographs.

_____

(S.D.N.Y., Feb. 16, 2023, No. 22-CV-7714 (LTS)) 2023 WL 2088175, at p. 2, fn. 3 ["OnlyFans is a social media platform that is 'inclusive of artists and content creators from all genres and allows them to monetize their content while developing authentic relationships with their fanbase'"].) OnlyFans also "serves as a platform for pornography." (G. Sitaraman, Deplatforming (2023) 133 Yale L.J. 497, 531; see L. Diaz, Intellectual Property Rights in Pornographic Content Creation: Are Your Onlyfans Your Only Fans? (2024) 48 Nova L.Rev. 309, 313 ["OnlyFans has attracted many porn stars and amateur porn personalities who wish to share exclusive content with their fans in exchange for money."].)

Wawrzenski and Mark attended the July 2, 2020 meeting, along with Serrano-Cobo and Wawrzenski's union representative, Kimberly Burckhalter.[6] By all accounts the meeting was contentious. According to Burckhalter, Mark and Serrano-Cobo informed Wawrzenski that posting pictures of herself in her uniform alongside pictures of her wearing swimsuits violated United's policy. Serrano-Cobo described Wawrzenski as "scantily clad" in a picture of Wawrzenski in a thong bikini. Burckhalter said she told Mark and Serrano-Cobo "this is what [this] generation of the world is doing now. They're all posting . . . their travels and, you know, they've got swimsuits on." Wawrzenski said other flight attendants, and "[e]ven the brand ambassadors that United has chosen, they have these photos of themselves . . . in their uniforms on their personal [social media] pages."

According to Wawrzenski, Mark and Serrano-Cobo identified several photographs as "suggestive" and "explicit," including a picture of Wawrzenski on the beach in a bikini with her back to the camera. Wawrzenski asked Serrano-Cobo what was suggestive about the photographs, and Serrano-Cobo said "posing in swimwear." Wawrzenski disagreed and said her father took several of the photographs. Wawrzenski also contested Mark's and Serrano-Cobo's use of the word "soliciting" to describe Wawrzenski's social media activity. According to Wawrzenski, Mark and Serrano-Cobo "insinuated" she was a prostitute by repeatedly stating that her photographs were suggestive, that she was "selling" herself, that she "had too much skin showing," and that the attire she wore depicted a "sexual image that

---

[6]     Burckhalter's name appears in the record spelled "Burckhalter" and "Burkhalter." We adopt the spelling from her deposition transcript.

11

solicits" her.  Burckhalter said she did not recall Mark or Serrano-Cobo referring to Wawrzenski as a prostitute.

Mark asked Wawrzenski to show him the contents of her OnlyFans account, but Wawrzenski refused.  Wawrzenski told Mark there was nothing related to United on her OnlyFans account, which focused on "lifestyle, workout, fitness, and nutrition content."  Burckhalter told Mark that she had reviewed Wawrzenski's OnlyFans account and did not see any "inappropriate" pictures on it.  She said the pictures on Wawrzenski's OnlyFans account were similar to those on her Instagram account, and Burckhalter did not remember seeing any photographs of Wawrzenski in her United uniform on Wawrzenski's OnlyFans account.

Mark reportedly told Wawrzenski that generating income from her OnlyFans account was a conflict of interest.  Wawrzenski said Mark also claimed an Instagram post from spring 2020 showing Wawrzenski in uniform with a message urging the public not to travel during the COVID pandemic was a potential conflict of interest.  That message stated "now [is] not the time to book your $50 round trip spring break travel [emoji] please for the sake of everyone we are out here jeopardizing our health to bring people safely home and we kindly ask YOU stay safe at home and do not contribute to the germs and virus spreading out here."

During the meeting Wawrzenski complained about feeling harassed by people making comments about the shape of her body, but she did not provide specific examples of past incidents.  She also stated she believed United would not have received the anonymous complaint about her social media if she were male.  Wawrzenski also complained United did not enforce its social

12

media policy consistently for male and female employees, but she did not identify specific accounts. Mark responded by saying the investigation was about her activities and not those of other employees. Mark and Serrano-Cobo gave Wawrzenski information about how to make a complaint to Stephanie Francis in the human resources department. Wawrzenski said that she left two voice mail messages for Francis after the July 2, 2020 meeting, but that Francis did return her calls.

Toward the end of the six-hour meeting Mark asked Wawrzenski to remove, by midnight, all photographs showing her in a United uniform from her Instagram account. According to Burckhalter, Mark said Wawrzenski's "'personal and United work should not be brought together.'" Wawrzenski protested, stating that "males are up on social media . . . posting nudity, Speedos, swimwear, less than clothing, and . . . [y]ou're not investigating them." Wawrzenski said she asked Mark if United was asking "everyone . . . to remove their photos," and Mark replied, "'They are not under the same umbrella.'"[7] Wawrzenski complained the request was "sexist and discriminatory," but she agreed to remove the photographs.

Mark also asked Wawrzenski to write a statement summarizing what occurred during the meeting. Wawrzenski's initial statement included complaints of harassment and discrimination based on her "looks" and gender. It also stated that Serrano-Cobo referred to one of Wawrzenski's photographs as "'explicit'" and that Mark "stated his opinion [Wawrzenski's] photos are not suggestive." Wawrzenski's statement reiterated her concerns that the use of the term "soliciting" suggested she

---

[7] This comment will have some significance in Wawrzenski's lawsuit against United.

13

was a prostitute and that neither Mark nor Serrano-Cobo responded when Wawrzenski asked if United was calling her a prostitute. According to Wawrzenski, Mark asked her to change her statement to eliminate her complaints of discrimination and disparate treatment, references to his and Serrano-Cobo's opinions about Wawrzenski's photographs, and references to prostitution. Wawrzenski said she revised her statement to remove any reference to Mark's opinion about her photographs because otherwise he would not have let her leave the meeting, but the revised statement retained her complaints of harassment and discrimination and the references to prostitution.

Soon after the July 2, 2020 meeting Mark informed manager Clarissa Perez about Wawrzenski's discrimination complaint. Perez was not aware of any investigation into Wawrzenski's complaint, but she said it "should have been investigated."

D.      *United Terminates Wawrzenski's Employment*

On July 7, 2020 Mark and Serrano-Cobo met with a management team to discuss the results of their investigation. Shortly after the meeting, Mark indicated in a text message he was willing to discipline Wawrzenski with a warning of "PW4," United's highest level of "Performance Warning" under its progressive discipline policy.

The next day, however, Mark learned Wawrzenski had failed to remove one photograph of herself in uniform from her Instagram account. Mark approached Burckhalter about the omission, and Burckhalter told Mark that she had reviewed Wawrzenski's account and that Wawrzenski had complied with Mark's request. Mark said, "'No. There's one that looks like it's

14

filtered. It's very light.'" Burckhalter said she reviewed Wawrzenski's account again and saw the photograph Wawrzenski failed to take down. She described it as "so filtered that . . . [y]ou can't even tell that it's blue until you look like really, really closely you notice she's in her uniform." Burckhalter said to Mark, "'So she missed one photo. . . . Let me get in touch with her and have her remove that photo.'" Wawrzenski claimed that she inadvertently failed to remove that one photograph from her account or that it somehow "popp[ed] back up." Burckhalter agreed it was a mistake.

Mark decided to terminate Wawrzenski's employment rather than issue a warning. Mark informed the management team that he recommended termination because Wawrzenski violated United's social media policy, the Working Together Guidelines, and the Code of Ethics and Compliance (for conflict of interest) and because she failed to comply with his instruction to remove all photographs of her in uniform from her Instagram account. On July 9, 2020 Mark met with the management team to discuss his recommendation. According to the senior manager for labor relations, Elizabeth Cavanagh, Mark had ultimate decisionmaking authority, but he was "vetting his finding" with others, who agreed with his decision to terminate Wawrzenski's employment.

On July 14, 2020 Mark and Serrano-Cobo met with Wawrzenski and Burckhalter to inform Wawrzenski that United was terminating her employment. A termination letter issued to Wawrzenski on July 17, 2020 identified four reasons for terminating her employment: (1) Wawrzenski "posted suggestive photographs, in conjunction with photographs of [her]self posing in United Airlines uniform on [her] public Instagram account,

15

with a link soliciting to join a private content, fee-required site"; (2) Wawrzenski "failed to comply with [Mark's] instructions . . . to remove the photos [of her] in uniform . . . by midnight on July 2, 2020"; (3) Wawrzenski violated the Working Together Guidelines governing professionalism (failing to "act in ways that reflect favorably on the Company"), responsibility (failing to use "good judgment in all decisions"), honesty (failing to "[b]e truthful in all communications" and avoiding "conflict of interest and the appearance of them"), and social networking guidelines (failing to post content that has only "a positive effect on United's business interests and reputation"); and (4) Wawrzenski created a "direct conflict of interest with the Company's Code of Ethics and Business Conduct." The termination letter also explained that Wawrzenski's combination of "United uniform photos with [her] suggestive photos as a tool to solicit access to [her] private content for a profit on Onlyfans.com for [her] financial gain" was a "clear conflict of interest" and that her failure "to recognize the seriousness of [the] offense" and to "acknowledge that [her] conduct was inappropriate" contributed to Mark's decision to terminate her employment.

E. *Wawrzenski Files This Action, the Trial Court Grants United's Motion for Summary Judgment, and Wawrzenski Appeals*

Wawrzenski filed a complaint with the Department of Fair Employment and Housing (now the Civil Rights Department) and in October 2020 obtained a right-to-sue letter. She alleged in her ensuing lawsuit causes of action for gender discrimination, hostile work environment harassment, and retaliation in violation of FEHA; failure to prevent discrimination, harassment,

16

and retaliation in violation of FEHA; whistleblower retaliation in violation of Labor Code section 1102.5; wrongful termination in violation of public policy; and intentional infliction of emotional distress.[8]  Wawrzenski also sought punitive damages.

United moved for summary judgment or in the alternative for summary adjudication on 31 issues covering elements of all Wawrzenski's causes of action.  The trial court granted United's motion in its entirety, ruling:  "The Court will grant summary judgment after ruling favorably to United on the 31 issues posted for summary adjudication."  The court listed those 31 issues in an appendix to its written ruling.  The court also ruled "United has shown a legitimate non-discriminatory basis for terminating [Wawrzenski], and [Wawrzenski] does not show substantial evidence that the reasons given for the termination were pretextual."  The court overruled all evidentiary objections.

Regarding Wawrzenski's cause of action for discrimination, the court rejected Wawrzenski's argument Mark's comment that everyone is not "under the same umbrella" was direct evidence of discrimination.  The court also rejected Wawrzenski's evidence United treated male flight attendants with social media accounts better than, or different from, Wawrzenski.  The court stated Wawrzenski failed to address whether United disciplined any of

---

[8]     Wawrzenski also asserted causes of action for failure to reimburse business expenses, unfair business practices, defamation, and coerced self-defamation.  Wawrzenski dismissed her cause of action for failure to reimburse business expenses before the trial court ruled on United's motion for summary judgment.  The trial court granted United's motion for summary adjudication on her causes of action for defamation and self-coerced defamation, and Wawrzenski does not challenge those rulings.

17

those (male) flight attendants, whether United received complaints about their social media activities, or whether they "used photographs in their United uniforms to advertise their pay-a-fee OnlyFans accounts." It is unclear, however, whether the trial court addressed Wawrzenski's evidence of male employees in the context of her prima facie case or in ruling Wawrzenski failed to show United's nondiscriminatory reasons for terminating Wawrzenski were pretextual. In any event, the trial court ruled Wawrzenski failed to establish a prima facie case of gender discrimination and to establish pretext.

Regarding Wawrzenski's cause of action for hostile work environment harassment, the trial court ruled as a matter of law the harassment Wawrzenski experienced was neither severe nor pervasive. The court also appeared to conclude, by citing *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918 (*Pollock*), which applied the then-applicable one-year limitations period in section 12960, former subdivision (d), to the plaintiff's FEHA cause of action, that certain allegations of harassment fell outside the applicable statute of limitations. The trial court, however, did not identify any such allegations or rule any evidence was inadmissible. Finally, the court ruled the United managers' use of the word "solicit" to describe Wawrzenski's actions did not constitute harassment because "the term solicitation can refer to any good or service one wants to sell, including the purported content in [Wawrzenski's] OnlyFans, which was 'fitness and nutrition content.'"

Regarding Wawrzenski's cause of action for retaliation under FEHA, the trial court ruled Wawrzenski failed to present evidence showing a causal connection between any protected activity and United's decision to terminate her employment. In

18

particular, the court stated Wawrzenski failed to show how her complaints about enforcement of the uniform policy "connect to the decision to terminate her." And the court ruled the complaints she lodged during her investigation meeting could not be the "motivating animus to the eventual decision to terminate as the existing investigation was about a different subject (her posing in a United uniform with other bikini photographs) on a website advertising for her OnlyFans fee-based website." The court also ruled there was no causal connection because Mark did not decide to terminate Wawrzenski until after she failed to remove all photographs of her in uniform from her Instagram account. Because the trial court concluded there were no triable issues of material fact regarding Wawrzenski's causes of action for discrimination, harassment, or retaliation under FEHA, the court ruled there were no triable issues of material fact regarding her cause of action for failure to prevent that conduct.

Regarding Wawrzenski's cause of action for whistleblower retaliation under Labor Code section 1102.5, the trial court ruled Wawrzenski failed to show any causal connection between the complaints underlying her cause of action for retaliation in violation of FEHA and United's decision to terminate her employment. The court also rejected Wawrzenski's claim an Instagram post about the public flying during the COVID pandemic was protected activity. Because the court granted United's motion on her Labor Code cause of action and all causes of action based on FEHA, the court ruled in favor of United on Wawrzenski's cause of action for wrongful termination in violation of public policy. The court also found no basis for Wawrzenski's cause of action for intentional infliction of emotional distress because the court ruled Wawrzenski failed to

19

show any "discriminatory animus" on the part of United. Thus, the court stated, Wawrzenski could not show United's conduct was "extreme and outrageous." Similarly, the court ruled Wawrzenski did not have a claim for punitive damages because the court was granting United's motion for summary judgment on all causes of action. The trial court entered judgment for United, and Wawrzenski timely appealed.

## DISCUSSION

A. *Summary Judgment Law and Standard of Review*

"'From commencement to conclusion, the moving party defendant bears the burden of persuasion that there is no triable issue of material fact and that the defendant is entitled to judgment as a matter of law.'" (*Brown v. Beach House Design & Development* (2022) 85 Cal.App.5th 516, 525; see *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; *Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 160 (*Martin*).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the moving party] carries [its] burden of production, [the moving party] causes a shift, and the opposing party is then subjected to a burden of production of [its] own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, at p. 850; see *Martin*, at p. 160.)

"When the moving party is a defendant, it must show that the plaintiff cannot establish at least one element of the cause of action." (*Martin, supra,* 97 Cal.App.5th at p. 160; see *Aguilar v.*

20

*Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 853.)  "The defendant must 'present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence.'"  (*Martin*, at p. 160; see *Aguilar*, at p. 853.)  "The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action.  The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing."  (*Aguilar*, at p. 855; accord, *Martin*, at p. 160.)

"On appeal from a summary judgment ruling, we review the record de novo to determine whether triable issues of material fact exist."  (*Martin*, *supra*, 97 Cal.App.5th at p. 160; see *Hampton v. County of San Diego*, *supra*, 62 Cal.4th at p. 347.)  "'"[W]e take the facts from the record that was before the trial court when it ruled on [the] motion.  [Citation.] . . . .  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'"  (*Hampton*, at p. 347; see *California Medical Assn. v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1087.)  "'We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale.'"  (*Martin*, at p. 161; see *Hampton*, at p. 347; *Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1024.)

B. *The Trial Court Erred in Granting United's Motion for Summary Adjudication on Wawrzenski's Cause of Action for Gender Discrimination*

1. *Applicable Law*

"FEHA prohibits an employer from subjecting an employee to an adverse employment action based on the employee's protected status. [Citation.] In evaluating claims of discrimination under FEHA, California courts apply the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792." (*Martin, supra,* 97 Cal.App.5th at p. 161; see *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) "Under this approach, if the plaintiff establishes a prima facie case supporting his or her discrimination claim, the burden of production shifts to the employer to rebut the presumption of discrimination by offering a legitimate, nondiscriminatory reason for the adverse employment action." (*Martin,* at p. 161; see *Harris,* at p. 214; *Guz,* at pp. 355-356.) To state a prima facie case of discrimination under FEHA, the plaintiff must show (1) she was a member of a protected class; (2) she was qualified for the position she sought or was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstance suggests discriminatory motive. (*Guz,* at p. 355; *Martin,* at p. 162.) The "plaintiff must establish a causal nexus between the adverse employment action and [her] protected characteristic." (*Martin,* at p. 162; see *Guz,* at p. 355; see § 12940, subd. (a).)

This first step of the *McDonnell Douglas* framework "is designed to eliminate at the outset the most patently

22

meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job [the plaintiff] sought was withdrawn and never filled. [Citations.] While the plaintiff's prima facie burden is 'not onerous' [citation], [the plaintiff] must at least show "'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.'"'" (*Guz, supra*, 24 Cal.4th at pp. 354-355; accord, *Department of Corrections & Rehabilitation v. State Personnel Bd.* (2022) 74 Cal.App.5th 908, 924.)

"An employer may meet its initial burden in moving for summary judgment by presenting evidence that one or more elements of a prima facie case are lacking, or the employer acted for a legitimate, nondiscriminatory reason." (*Martin, supra*, 97 Cal.App.5th at p. 162; see *Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 32.) "A legitimate, nondiscriminatory reason is one that is unrelated to unlawful bias and, if true, would preclude a discrimination finding. [Citation.] '[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct.'" (*Martin*, at p. 162; see *Guz, supra*, 24 Cal.4th at p. 358.)

"If the employer puts forth a legitimate basis for the adverse employment action, the burden of production shifts to the plaintiff to present evidence creating a triable issue of fact showing the employer's stated reason was a pretext for unlawful animus in order to avoid summary judgment." (*Martin, supra*, 97 Cal.App.5th at p. 162.) "In addition, FEHA does not require proof that discriminatory animus was a 'but for' cause of an adverse action, only that it was a 'substantial motivating factor.'

23

[Citation.] 'Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions.'" (*Martin*, at p. 162; see *Harris, supra*, 56 Cal.4th at pp. 229-232; *Guz, supra,* 24 Cal.4th at p. 361.) Ultimately, "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz*, at p. 361; see *Martin*, at p. 162.)

If a plaintiff can demonstrate "direct evidence of discriminatory animus," then the burden-shifting analysis does not apply. (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 550; see *Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1144.) "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." (*DeJung*, at p. 550; see *Zamora v. Security Industry Specialists, Inc.*, *supra*, 71 Cal.App.5th at p. 35.) Because "direct evidence of intentional discrimination is rare," the plaintiff must usually prove discrimination circumstantially. (*Khoiny v. Dignity Health* (2022) 76 Cal.App.5th 390, 398; see *Department of Corrections & Rehabilitation v. State Personnel Bd.*, *supra*, 74 Cal.App.5th at p. 923.)

> 2. *Wawrzenski Did Not Submit Direct Evidence of Discrimination*

In opposing United's motion for summary judgment, Wawrzenski argued Mark's comment that not everyone at United was "under the same umbrella" is direct evidence of

24

discriminatory intent, so that the *McDonnell Douglas* burden-shifting framework does not apply. Wawrzenski argues on appeal the trial court erred in ruling Mark's comment was not direct evidence of discrimination. The trial court, however, was correct because Mark's comment requires an inference to show discriminatory animus. Standing alone, it demonstrates neither discriminatory animus nor a causal relationship between the comment and United's decision to terminate Wawrzenski's employment. (See *Zamora v. Security Industry Specialists, Inc.*, *supra*, 71 Cal.App.5th at p. 35; *DeJung v. Superior Court*, *supra*, 169 Cal.App.4th at p. 550.)

Wawrzenski repeatedly argues Mark stated "males" were not "under the same umbrella." But that is not what she alleged. According to Wawrzenski, she asked Mark, "'Is this United's new social media policy in which you are asking all 90,000 employees to remove themselves in uniform?'" and "Mark replied, 'No, we cannot put everyone under the same umbrella.'" It is unclear from Wawrzenski's allegation whom Mark included in his reference to "everyone." He could have meant male employees, but he also could have meant all employees. Wawrzenski cannot now change her story to avoid summary adjudication. (See *Cohen v. Kabbalah Centre Internat., Inc.* (2019) 35 Cal.App.5th 13, 18.) "The complaint is supposed to set forth the plaintiff's proposed case, which the defendant's summary adjudication motion then aims to test as a matter of law." (*Ibid.*; see *Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 100 ["[t]he complaint's allegations . . . concede the truth of [the] matter"], internal quotation marks omitted.) The trial court did

not err in ruling Mark's "umbrella" comment was not direct evidence of discrimination.[9]

> ### 3. *Wawrzenski Met Her Burden To Show a Prima Facie Case of Discrimination*

Wawrzenski also argues she presented sufficient circumstantial evidence to satisfy her burden of making a prima facie case of discrimination. United concedes Wawrzenski satisfied the first three elements of a prima facie case (she was a member of a protected class, was qualified for the position, and was performing competently in the position when she suffered an adverse employment action), but contests the fourth (circumstantial evidence suggesting United acted with discriminatory animus). In the trial court Wawrzenski did not appear to recognize she had the burden to produce evidence on this element once United argued there was no evidence suggesting a discriminatory motive, and she cited evidence only to support her contention United's stated reasons for her termination were pretextual. In that context, however, she

---

[9] For the first time in her reply brief Wawrzenski argues that Mark's "umbrella" comment "is at the very least ambiguous" and that, "against the backdrop of other circumstantial evidence," it shows discriminatory intent. Wawrzenski forfeited this argument because she did not make it in the trial court or in her opening brief on appeal. (See *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295 ["we will not address arguments raised for the first time in the reply brief"]; *Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1271, fn. 5 ["'[a]lthough our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief'"].)

argued circumstantial evidence of disparate treatment "may by itself support a claim for discrimination," which is correct. (See *Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 519 ["Plaintiffs in FEHA cases can prove their cases by presenting either direct evidence, such as statements or admissions, or circumstantial evidence, such as comparative or statistical evidence."]; *Hawn v. Executive Jet Management, Inc.* (9th Cir. 2010) 615 F.3d 1151, 1156 ["a plaintiff may show 'an inference of discrimination . . .' through comparison to similarly situated individuals, or any other circumstances 'surrounding the adverse employment action [that] give rise to an inference of discrimination'"].)[10] Construing that evidence liberally (as we must), we conclude Wawrzenski (barely) met her burden on the first step of the *McDonnell Douglas* framework.

To support her argument United enforces its social media policy differently against men and women, Wawrzenski submitted evidence of three "comparators" who were male United employees with social media accounts that included pictures of themselves in uniform and in "suggestive" poses, but who were not disciplined or who received only a performance warning. (See *Gupta v. Trustees of California State University*, *supra*, 40 Cal.App.5th at p. 520 [referring to individuals allegedly "treated more favorably" than the plaintiff as "comparator[s]"]; see also *Allen v. Staples, Inc.* (2022) 84 Cal.App.5th 188, 194;

---

[10] "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz, supra*, 24 Cal.4th at p. 354; see *Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 626.)

27

*Ballou v. McElvain* (9th Cir. 2022) 29 F.4th 413, 423.)
"Cameron," a United flight attendant based in Denver, had an
Instagram account showing pictures of himself almost nude and
in uniform. Cameron's Instagram account included a link to
another account called a "Drag Account," and that account listed
Cameron's email address for "Bookings" and his Venmo account
name.[11] Wawrzenski submitted testimony from a United
representative that Cameron received only a Performance
Warning Level 4. "Juliano," a United flight attendant based in
San Francisco, had an Instagram account featuring "suggestive
pictures, videos and captions" alongside pictures of himself in his
United uniform. In November 2021 United issued Juliano a
Performance Warning Level 4 after he removed certain pictures
from his account; United concluded Juliano was "not
meaningfully trying to violate any United policies." And
"AviatorDave," a United "brand ambassador" based in
San Francisco, had an Instagram account that included pictures
of himself in uniform, in swimwear, shirtless in open bathrobes,
and in bed. AviatorDave's Instagram account included a
Linktree link to "Aviator Dave TV," where subscribers could
access information about flying. AviatorDave's supervisor
testified she had never seen his social media accounts.

"Evidence that an employer treated 'similarly situated'
employees outside the plaintiff's protected class ""more
favorably"" is probative of the employer's discriminatory or
retaliatory intent." (*Gupta v. Trustees of California State
University*, *supra*, 40 Cal.App.5th at p. 519; see *Guz, supra*,

---

[11]    "Venmo is a money-transfer service that allows users to
transfer funds electronically through the Internet." (*Disciplinary
Counsel v. Ford* (2020) 159 Ohio St.3d 558, 562, fn. 1.)

28

24 Cal.4th at p. 366.) Citing *Gupta*, United argues Wawrzenski failed to provide evidence of male United employees with social media accounts who were "'similarly situated'" to her "'in all relevant respects.'" (See *Gupta*, at pp. 519-520; see also *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1535 ["To establish discrimination based on disparate discipline, it must appear 'that the misconduct for which the employer discharged the plaintiff was the same or similar to what a similarly situated employee engaged in, but that the employer did not discipline the other employee similarly."].) "In general, 'individuals are similarly situated when they have similar jobs and display similar conduct.'" (*Gupta*, at p. 520; see *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 172 ["Another employee is similarly situated if, among other things, he or she "'engaged in the same conduct without any mitigating or distinguishing circumstances."'"].)

United contends the three male employees with the social media accounts "are not proper comparators" because they had different positions at United, their conduct was different, and they had different supervisors. While courts have cited such differences as reasons for finding comparators were not "similarly situated" to the plaintiff (see, e.g., *Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634, 641 ["[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees"]; *Meaux v. Northwest Airlines, Inc.* (N.D.Cal. 2010) 718 F.Supp.2d 1081, 1091 ["the same decisionmaker was not involved in [the comparator's] and Plaintiff's discipline decision"]), whether the plaintiff is similarly situated to other employees is generally a question of fact. (*Earl v. Nielsen Media Research, Inc.* (9th Cir. 2011) 658 F.3d 1108,

29

1116; *Hawn v. Executive Jet Management, Inc., supra*, 615 F.3d at p. 1157; see *Beck v. United Food & Commercial Workers Union, Local 99* (9th Cir. 2007) 506 F.3d 874, 885, fn. 5 ["We agree with our sister circuits that whether two employees are similarly situated is ordinarily a question of fact."].) Indeed, the "employees' roles need not be identical; they must only be similar 'in all material respects,'" and "[m]ateriality will depend on context and the facts of the case." (*Hawn*, at p. 1157; accord, *Earl*, at p. 1114; see *Graham v. Long Island R.R.* (2d Cir. 2000) 230 F.3d 34, 40 ["the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical"].)

Wawrzenski submitted evidence of how United treated the three male employees whose Instagram accounts included pictures of them in uniform and in arguably suggestive poses. Two of those accounts also included links or references to other accounts where the employees could earn income unrelated to their employment with United. The trial court ruled the three male employees were not sufficiently similarly situated to Wawrzenski.[12] The court stated that Wawrzenski failed to show anyone filed a complaint about AviatorDave or Juliano, that she failed to submit evidence Cameron received only a warning (in fact, she provided that evidence, but failed to cite it in her memorandum of points and authorities in opposition to the

---

[12] The trial court made this ruling in the context of United's argument Wawrzenski failed to create a triable issue of material fact regarding pretext; the court (like Wawrzenski) did not appear to consider Wawrzenski's comparator evidence in the context of her prima facie case.

30

motion), and that she had not shown Juliano had an "OnlyFans account that he was advertising in a United uniform." While these factual statements were (mostly) accurate, the trial court used the wrong standard for comparator evidence: Rather than requiring the male employees' conduct and treatment to be similar "in all relevant respects," the court required their conduct and treatment to be identical to Wawrzenski's in all respects. (See *Gupta v. Trustees of California State University*, *supra*, 40 Cal.App.5th at p. 519; see also *Guz*, *supra*, 24 Cal.4th at p. 369 [requiring that similarly situated employees have only "similar or comparable" duties and responsibilities].)

While United identifies some differences between Wawrzenski's conduct and experience and those of the male employees, there were also many similarities. For example, all four social media accounts included pictures of United employees in uniform and partially nude or in swimwear, two of the three comparators' accounts included links or references to monetized accounts, and the same social media policy applied to all four employees for the same purposes. (See *Earl v. Nielsen Media Research, Inc.*, *supra*, 658 F.3d at p. 1115 [comparators were similarly situated where, among other things, the relevant policies and procedures that applied to the plaintiff also applied to the comparators and served the same purpose].) Determining which similarities and differences are relevant "depends on the context and is a question of fact that 'cannot be mechanically resolved.'" (*Id.* at p. 1114; see *Hawn v. Executive Jet Management, Inc.*, *supra*, 615 F.3d at p. 1157.) A reasonable factfinder could conclude Wawrzenski and the three male United employees were "'sufficiently similarly situated to support an inference of discrimination.'" (*Riggs v. AirTran Airways, Inc.*

31

(10th Cir. 2007) 497 F.3d 1108, 1117; see *Graham v. Long Island R.R.*, *supra*, 230 F.3d at pp. 42-43 [a rational jury could find the plaintiff and another employee were similarly situated where they engaged in different misconduct but were subject to the same conditions for dismissal].)

### 4. *Wawrzenski Presented Sufficient Evidence of Pretext*

The trial court ruled United showed "a legitimate non-discriminatory basis for terminating" Wawrzenski's employment, and Wawrzenski does not argue or attempt to show the court erred in that respect. Wawrzenski does argue, however, the trial court erred in ruling as a matter of law Wawrzenski could not establish United's stated reasons were pretextual. Wawrzenski submitted a variety of evidence to attack United's proffered reasons as pretexts for discrimination, including evidence of disparate treatment, United's failure to investigate her complaints of discrimination and harassment, and a discriminatory atmosphere. Together, this evidence cast sufficient doubt on United's nondiscriminatory reasons for terminating Wawrzenski's employment to defeat United's motion for summary adjudication on her cause of action for discrimination.

First, "[s]howing disparate treatment or policy enforcement is a permissible means to establish pretext." (*Wills v. Superior Court*, *supra*, 195 Cal.App.4th at p. 172.) As discussed, Wawrzenski submitted evidence of United's treatment of three male employees who were subject to the same social media policy as Wawrzenski, whose Instagram accounts included pictures of them in uniform and in arguably suggestive poses, and yet who

were either not disciplined or received only a warning.  (See *Graham v. Long Island R.R.*, *supra*, 230 F.3d at p. 40 [employees are similarly situated in all material respects where they "were subject to the same workplace standards and . . . the conduct for which the employer imposed discipline was of comparable seriousness"].)

Second, there was evidence United failed to investigate Wawrzenski's complaints of discrimination and harassment. (See *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 280 [an employer's failure to adequately investigate an altercation between the plaintiff and another employee evidenced pretext]; *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 120-121 [employer's "lack of thoroughness" in its investigation of the plaintiff's alleged misconduct supported an inference of discriminatory pretext].)  Though United contends Wawrzenski never reported an incident of misconduct "in writing or through formal channels," Wawrzenski testified she reported numerous incidents of alleged discrimination and harassment to her supervisor Nunn.  And United's Working Together Guidelines specify that employees may raise concerns about discriminatory or harassing conduct with their "management team," which for Wawrzenski included Nunn.  Nothing in the Guidelines or FEHA required Wawrzenski to report suspected discrimination and harassment through every channel available to her.  Moreover, Wawrzenski did complain "in writing" to Mark about the alleged discrimination and harassment in the statement she prepared following the investigation meeting on July 2, 2020.  And Perez admitted United "should have" investigated those complaints.

Finally, Wawrzenski presented evidence there was a discriminatory work atmosphere at United.  Nunn told

33

Wawrzenski that she would experience "a lot of hate" because she was a "young, attractive female" and that she should "get used to it." (See *Rachells v. Cingular Wireless Employee Services, LLC* (6th Cir. 2013) 732 F.3d 652, 665 [discriminatory atmosphere is relevant to pretext]; *Cariglia v. Hertz Equipment Rental Corp.* (1st Cir. 2004) 363 F.3d 77, 85 [same]; *Munoz v. National Railroad Passenger Corp.* (C.D.Cal., Nov. 23, 2016, No. CV 15-6309 DMG (JEMx) 2016 WL 11744436, at p. 1 [same]; see also *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 545 [probative value of "stray remarks . . . turns on the facts of each case"].) Although Nunn was not involved in the decision to terminate Wawrzenski's employment, Nunn made these statements in spring 2020, just a few months before United terminated Wawrzenski's employment. (See *Rachells*, at p. 665 ["[f]actors affecting whether discriminatory atmosphere evidence is probative of discrimination in a particular case include: 'the [actor]'s position in the [employer's] hierarchy, the purpose and content of the [conduct], and the temporal connection between the [conduct] and the challenged employment action, as well as whether the [conduct] buttresses other evidence of pretext'"], brackets in original; *Ercegovich v. Goodyear Tire & Rubber Co.* (6th Cir. 1998) 154 F.3d 344, 356 [discriminatory statements, even by a nondecisionmaker, "may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decisionmaking process for a considerable time"].) This evidence, together with Wawrzenski's evidence of disparate treatment and United's failure to investigate her complaints, met Wawrzenski's burden on the third step of the *McDonnell Douglas* framework.

34

C.   *The Trial Court Erred in Granting United's Motion*
     *for Summary Adjudication on Wawrzenski's Cause of*
     *Action for Hostile Work Environment Harassment*

1.   *Applicable Law*

"It is an unlawful employment practice for an employer to 'harass' an employee based on membership in a protected class" (*Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611, 626 (*Bailey*)), including "because of . . . sex" (§ 12940, subd. (j)(1); see *Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 877-878 (*Beltran*)).  "Harassment includes '[v]erbal harassment' such as 'epithets, derogatory comments or slurs on a basis enumerated in [FEHA].'"  (*Bailey*, at p. 627; see Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(A).) Sexual harassment also includes "'any unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature.'"  (*Beltran*, at p. 878; see Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(D).)  Hostile work environment harassment is a type of sexual harassment that "'has the purpose or effect of either interfering with the work performance of an employee, or creating an intimidating workplace.'"  (*Beltran*, at p. 878; see *Bailey*, at p. 627 ["harassment claims focus on 'situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee'"].)

To prevail on a claim of hostile work environment under FEHA, an employee must show he or she was subjected to harassing conduct that was (1) unwelcome, (2) because of sex or gender, and (3) sufficiently severe or pervasive to alter the

35

conditions of her employment and create an abusive work environment. (*Bailey*, *supra*, 16 Cal.5th at p. 627; *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279; see § 12940, subd. (j)(4)(C) ["'harassment' because of sex includes sexual harassment [and] gender harassment"].) "'The working environment must be evaluated in light of the totality of the circumstances.' [Citation.] "'These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" [Citation.] "'The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.'" [Citation.] "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)'" are not sufficient to create an actionable claim of harassment." (*Bailey*, at p. 628; see *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 462.) "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." (*Bailey*, at p. 629; see *Miller*, at p. 462.)

Before 2019 the "severe or pervasive" requirement "was quite a high bar for plaintiffs to clear, even in the context of a motion for summary judgment." (*Beltran*, *supra*, 97 Cal.App.5th at p. 878.) Effective January 1, 2019, however, the Legislature added section 12923, which "clarified existing law" to provide "that '[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive work environment.'" (*Beltran*, at p. 878; see § 12923, subd. (b).) Section 12923 also "clarified

36

that a hostile work environment exists 'when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being.' The plaintiff is not required to show a decline in productivity, only 'that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to "make it more difficult to do the job."'" (*Beltran*, at p. 878; see *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 25 (conc. opn. of Ginsburg, J.).)

United accurately quotes *Beltran* for the proposition that section 12923 "'did not change the substantive law of sexual harassment.'" (*Beltran, supra*, 97 Cal.App.5th at p. 879.) But the Supreme Court in *Beltran* recognized section 12923 did address "how the trial courts were to apply that law, particularly and specifically in the context of summary judgment." (*Beltran*, at p. 879.) Indeed, the Legislature declared: "Harassment cases are rarely appropriate for disposition on summary judgment." (§ 12923, subd. (e); see *Nazir v. United Airlines, Inc., supra*, 178 Cal.App.4th at p. 286 [because "many employment cases present issues of intent, and motive, and hostile working environment, issues not determinable on paper," such cases "are rarely appropriate for disposition on summary judgment"]; see also *Bailey, supra*, 16 Cal.5th at p. 634, fn. 7 [in enacting section 12923 the Legislature affirmed the decision in *Nazir* and observed "hostile working environment cases involve issues 'not determinable on paper'"].) And even before the Legislature enacted section 12923, the law required courts to interpret FEHA

37

liberally to achieve its purposes.  (§ 12993, subd. (a); *Beltran*, at p. 878.)

"FEHA imposes two standards of employer liability for sexual harassment, depending on whether the person engaging in the harassment is the victim's supervisor or a nonsupervisory coemployee.  The employer is liable for harassment by a nonsupervisory employee only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action."  (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040-1041; see § 12940, subd. (j)(1); *Bailey*, *supra*, 16 Cal.5th at pp. 626-627.)  However, "FEHA makes the employer strictly liable for harassment by a supervisor."  (*State Dept. of Health Services*, at p. 1041; see *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1313, fn. 7.)

Before addressing the merits of Wawrzenski's cause of action for hostile work environment harassment, we must address the temporal scope of the evidence Wawrzenski may submit to support her claim.  United argued in the trial court, and the trial court appeared to rule, that Wawrzenski did not exhaust her administrative remedies for allegations of harassment occurring before 2019 and that therefore she could not rely on evidence of harassment before 2019.  Under the continuing violation doctrine, however, she can rely on pre-2019 incidents of harassment.

2.    *Wawrzenski May Rely on Pre-2019 Allegations Under the Continuing Violation Doctrine*

An employee who wants to bring an action under FEHA must exhaust the administrative remedy provided by the statute

38

by filing a complaint with the Civil Rights Department and obtaining from the Department a notice of right to sue. (*Pollock*, *supra*, 11 Cal.5th at p. 931; see *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.) "'The timely filing of an administrative complaint' before the [Department] 'is a prerequisite to the bringing of a civil action for damages.'" (*Pollock*, at p. 931; see *Romano*, at p. 492.) Until the end of December 2019, the plaintiff had to file a complaint with the Department within one year of the alleged misconduct. (See § 12960, former subd. (d); *Pollock*, at p. 931.) Effective January 1, 2020 the Legislature amended section 12960 to change this deadline to three years, but the bill that extended the limitations period stated that "[t]his act shall not be interpreted to revive lapsed claims." (Assem. Bill No. 9 (2018-2019 Reg. Sess.) § 3; see Legis. Counsel's Dig., Assem. Bill No. 9 (2019-2020 Reg. Sess.) ["This bill would prohibit its provisions from being interpreted to revive lapsed claims."].)

Under the "continuing violation" doctrine, however, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056 (*Yanowitz*).) The continuing violation doctrine requires proof that "(1) the defendant's actions inside and outside the limitations period are sufficiently similar in kind; (2) those actions occurred with sufficient frequency; and (3) those actions have not acquired a degree of permanence." (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 850-851; see *Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1402.) "Permanence" means that an employer's actions and

statements make clear to a reasonable employee that any further informal efforts to end the discrimination will be futile. (See *Jumaane*, at p. 1402.)

United argued in the trial court that under *Pollock, supra*, 11 Cal.5th 918 Wawrzenski's claims arising from conduct occurring before January 1, 2019 were time-barred because the one-year statute of limitations applied until January 1, 2020, and Wawrzenski did not exhaust her administrative remedies until October 2020. The trial court didn't really address United's argument or the continuing violation doctrine; the court cited *Pollock* and stated Wawrzenski "makes no attempt whatsoever to argue that the continuing violation doctrine applies." The trial court was incorrect: Wawrzenski addressed the continuing violation doctrine in her opposition to United's motion for summary judgment. But she does not argue in her opening brief on appeal the trial court erred in stating she did not argue the doctrine applies. As a result, United argues Wawrzenski's appellate oversight "leaves undisturbed the trial court's conclusion that [the alleged pre-2019] instances are not properly considered as part of her lawsuit."

But the trial court never ruled Wawrzenski could not rely on evidence of alleged harassment occurring before January 1, 2019 (or any other date). Nor did the court rule the continuing violation doctrine did not apply. The court merely cited *Pollock* without analysis and stated incorrectly that Wawrzenski did not address the continuing violation doctrine in her opposition to the motion for summary judgment. Thus, there was no ruling adverse to Wawrzenski on this issue that she needed to address in her opening brief. (See *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 379-380

40

& fn. 13 ["the trial court's failure to adopt grounds for summary judgment or summary adjudication urged by the respondent does not constitute an error from an appellant's point of view," and the "appellant therefore need not address them in its opening brief (though it may do so)"].)  Wawrzenski did not need to address this issue until United (properly) raised the issue in its respondent's brief, and Wawrzenski (properly) addressed it in her reply brief, where she argues, as she did in the trial court, "the evidence of discriminatory and harassing conduct started at the inception of [Wawrzenski's] employment and was ongoing throughout her employment, up until termination."

Wawrzenski submitted evidence that the type of harassment she experienced before 2019 was similar in kind to the harassment she experienced after 2019 and that the harassment occurred with sufficient frequency.  Wawrzenski stated in her declaration and at her deposition that before 2019 she regularly heard or learned about offensive comments directed at her body or at the way her uniform looked on her body.  We accept these statements as true.  (See *Wong v. Stillwater Ins. Co.* (2023) 92 Cal.App.5th 1297, 1315 ["'[w]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them'"].)  These incidents were "sufficiently linked" to comments directed to Wawrzenski after January 2019 because they all focused on Wawrzenski's body.  (See *Yanowitz, supra*, 36 Cal.4th at p. 1056 [continuing violation doctrine makes an employer liable "for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period"].)  Thus, the continuing violation doctrine applies, and Wawrzenski was entitled to rely on

41

evidence of incidents prior to January 1, 2019 in opposition to United's motion for summary adjudication on her cause of action for hostile work environment harassment. (See *Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 721-722 [doctrine applied where harassment occurring within and outside the limitations period based on the plaintiff's sexual orientation was "sufficiently related"]; see also *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 821-822 [courts should apply the continuing violations doctrine flexibly to achieve "the letter and the spirit" of FEHA].)[13]

> 3. *The Trial Court Erred in Ruling the Alleged Harassment Was Not Severe and Pervasive as a Matter of Law*

Wawrzenski relies on two categories of unwanted comments to support her cause of action for hostile work environment harassment. One category includes comments about her body and the way she looked in her uniform; the other includes comments made during the July 2, 2020 meeting, where Wawrzenski claims Mark and Serrano-Cobo "insinuated" she was a prostitute. We need only address the first.

---

[13] Wawrzenski also stated in her opposition to the motion for summary judgment that in 2015 she experienced "unwanted touching" from a captain who approached her from behind and began rubbing her shoulders. Wawrzenski did not allege in her complaint she experienced unwanted touching and, even if she had, she did not allege any similar conduct continued after January 2019. Thus, any claim for harassment based on such conduct is time-barred. (See § 12960, former subd. (d); *Pollock, supra*, 11 Cal.5th at p. 931.)

Wawrzenski's evidence of unwanted comments concerning her body and the way her body looked in her uniform create triable issues of material fact regarding whether the comments were sufficiently severe or pervasive. Wawrzenski had to show only that the harassing conduct sufficiently offended, humiliated, distressed, or intruded on her so that it disrupted her "emotional tranquility in the workplace" or otherwise interfered with and undermined her "personal sense of well-being." (§ 12923, subd. (a); see *Beltran*, *supra*, 97 Cal.App.5th at p. 878.) The evidence Wawrzenski submitted met this low bar. In particular, the evidence that coworkers and other United employees made offensive comments about Wawrzenski's body on a monthly basis, that flight attendants and pilots commented on her "butt," that her supervisor and others made her change uniforms several times based on unfounded accusations, and that her workplace became "miserable" created triable issues of material fact regarding whether her emotional tranquility was disturbed and her sense of well-being was undermined in the workplace. (See *Beltran*, at pp. 880-881 ["evidence of multiple incidents of conduct over a period of months, including leering gestures, hand massages, and inappropriate questions," was "more than sufficient to raise a triable issue of fact as to whether 'a reasonable person who was subjected to the harassing conduct would find that the conduct so altered working conditions as to make it more difficult to do the job'"].)

United argues there is "no evidence Wawrzenski sufficiently apprised management" of the comments about her body or her failure to comply with uniform standards. But several of the harassing comments and actions were made or taken by managers or supervisors (including Nunn, Korn, Gallo,

43

Nakasone, and Serrano-Cobo), who may qualify as "supervisors" under FEHA and trigger strict liability. (See § 12926, subd. (t) [defining "supervisor" to include an individual having the authority to "discipline other employees"].) And Wawrzenski brought many of the other comments to the attention of her supervisor Nunn several times, and there is no evidence Nunn or United took any action to stop the harassment. (See *Dickson v. Burke Williams, Inc.*, *supra*, 234 Cal.App.4th at p. 1313, fn. 7; *Sheffield v. Los Angeles County Dept. of Social Services* (2003) 109 Cal.App.4th 153, 164 [employer could be liable for hostile work environment harassment where the plaintiff's supervisor was aware of the harassment and failed to take reasonable steps to prevent it].) United had sufficient knowledge, for purposes of summary judgment, to incur liability for the actions of its nonsupervisory employees. (See *State Dept. of Health Services v. Superior Court*, *supra*, 31 Cal.4th at p. 1041.)

United also argues "there is nothing sex-specific" about the comments about Wawrzenski's body and uniform. While some comments appear to relate primarily to United's enforcement of its uniform policy, a reasonable factfinder could infer other comments—such as those about Wawrzenski's "'butt'" and her "'breaking necks'" of male employees who looked at her—and the "unwanted sexual advance[s]" had "sexual connotations" or were based on Wawrzenski's gender. (See *Beltran*, *supra*, 97 Cal.App.5th at p. 878 ["'[s]exual harassment consists of any unwelcome sexual advances . . . or other verbal or physical conduct of a sexual nature'"]; *Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1527 [acts having "sexual connotations" may support a claim for hostile work environment harassment]; see also § 12940, subd. (j)(4)(C) ["'harassment' because of sex

44

. . . need not be motivated by sexual desire"].)  Contrary to United's suggestion, that some of the coworkers who made offensive comments were women does not mean the comments were not sufficiently "sexual."  (See *Singleton v. United States Gypsum Co.* (2006) 140 Cal.App.4th 1547, 1557 ["sexual harassment in violation of [section 12940] 'may be stated by a member of the same sex as the harasser'"]; *Sheffield v. Los Angeles County Dept. of Social Services*, *supra*, 109 Cal.App.4th at p. 160 ["[s]ame sex harassment is considered sexual harassment"].)

United also cites several cases, decided before the 2019 amendments to FEHA, stating that comments "far more hostile" than those Wawrzenski endured did not constitute hostile work environment harassment.  For example, United cites *Hughes v. Pair* (2009) 46 Cal.4th 1035, where the plaintiff sued the trustee of a trust created for the benefit of the plaintiff's son for violation of Civil Code section 51.9, which prohibits sexual harassment in certain business relationships outside the workplace.  (*Hughes*, at p. 1039.)  The plaintiff alleged that, during a telephone conversation, the defendant "called plaintiff 'sweetie' and 'honey,' and said he thought of her 'in a special way, if you know what I mean.'"  (*Id.* at p. 1040.)  The defendant also told the plaintiff: "'You are one of the most beautiful, unattainable women in the world.  Here's my home telephone number and call me when you're ready to give me what I want.'"  (*Ibid.*)  The defendant later told the plaintiff in person, "'I'll get you on your knees eventually.  I'm going to fuck you one way or another.'"  (*Ibid.*)  While these comments are unquestionably more "severe" than those Wawrzenski experienced, the Supreme Court in *Hughes* affirmed an order granting the defendant's motion for summary

judgment in that case under very different standards than those (later) established by Government Code section 12923. (See *Beltran*, *supra*, 97 Cal.App.5th at p. 880 [cases decided before section 12923 went into effect "are no longer good law when it comes to determining what conduct creates a hostile work environment in the context of a motion for summary judgment or adjudication"]; *Williamson v. DHL Global Forwarding USA* (C.D.Cal. Apr. 24, 2024, No. 2:24-cv-01476-WLH-BFM) 2024 WL 1759172, at p. 3 [same].) To the extent *Hughes* suggests that "an isolated incident of harassing conduct may qualify as 'severe'" only if "it consists of 'a *physical* assault or the threat thereof'" (*Hughes*, at p. 1049), such a suggestion is no longer the law. Under section 12923 an isolated incident of harassing conduct need only have "unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive work environment." (§ 12923, subd. (b).) A physical assault or threat is not required.

Similarly, United cites *Brennan v. Townsend & O'Leary Enterprises, Inc.* (2011) 199 Cal.App.4th 1336, also decided before the Legislature enacted section 12923, where the court affirmed an order granting the defendant's motion for judgment notwithstanding the verdict after a trial in which the plaintiff presented evidence of only three incidents of gender-based conduct involving coworkers over the span of several years. *Brennan*, too, is no longer good law. And it is distinguishable: Unlike the plaintiff in that case, Wawrzenski presented evidence she endured offensive gender-based comments "several times a month" throughout her employment.

46

D.    *The Trial Court Erred in Granting United's Motion for Summary Adjudication on Wawrzenski's Cause of Action for Retaliation Under FEHA*

Section 12940, subdivision (h), "makes it an unlawful employment practice '[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'"  (*Yanowitz, supra,* 36 Cal.4th at p. 1042, italics omitted.)  "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  (*Yanowitz,* at p. 1042; see *Khoiny v. Dignity Health, supra,* 76 Cal.App.5th at p. 397; *Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 185.)  Wawrzenski and United contest the first and third elements of Wawrzenski's prima facie case.  (See *Wilkin v. Community Hospital of the Monterey Peninsula* (2021) 71 Cal.App.5th 806, 828 ["In summary judgment proceedings, a FEHA retaliation claim is treated the same as a FEHA discrimination claim" and is subject to the same *McDonnell Douglas* burden-shifting framework].)

1.    *Wawrzenski Created a Triable Issue of Material Fact Regarding Whether She Engaged in Protected Activity*

"Protected activity" includes "oppos[ing] conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is

47

ultimately found to violate the FEHA.  It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1043.)  The "reasonableness of the employee's belief 'has both a subjective and an objective component.'" (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 381; accord, *Vines v. O'Reilly Auto Enterprises, LLC*, *supra*, 74 Cal.App.5th at pp. 185-186)  "To meet his burden on this issue, '[a] plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.'  [Citation.]  The objective reasonableness of an employee's belief that his employer has engaged in a prohibited employment practice 'must be measured against existing substantive law.'" (*Dinslage*, at pp. 381-382; see *Vines*, at pp. 185-186.)

"Standing alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1046; see *Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1046.)  "Although an employee need not formally file a charge in order to qualify as being engaged in protected opposing activity, such activity must oppose activity the

48

employee reasonably believes constitutes unlawful discrimination, and complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Yanowitz*, at p. 1047, fn. omitted; see *Castro-Ramirez*, at p. 1046.) "'[A]n employee is not required to use legal terms or buzzwords when opposing discrimination. The court will find opposing activity if the employee's comments, when read in their totality, oppose discrimination.'" (*Yanowitz*, at p. 1047; see *Castro-Ramirez*, at p. 1046.)

"'Retaliation claims are inherently fact-specific' [citation], and 'protected conduct can take many forms.'" (*Castro-Ramirez v. Dependable Highway Express, Inc.*, *supra*, 2 Cal.App.5th at p. 1046.) Employees' beliefs they are complaining about prohibited conduct "may be inferred from the nature and content of their repeated complaints. The issue of a plaintiff's subjective, good faith belief involves questions of credibility and ordinarily cannot be resolved on summary judgment." (*Miller v. Department of Corrections*, *supra*, 36 Cal.4th at p. 476; see *Castro-Ramirez*, at p. 1047.)

On the subjective component, Wawrzenski submitted evidence she complained to Nunn, Nakasone, and Serrano-Cobo about United's discriminatory enforcement of its uniform policy and about the harassing comments. She also submitted evidence she complained to Mark and Serrano-Cobo at the July 2, 2020 investigation meeting about these same issues, as well as about United's disparate enforcement of its social media policy. This evidence created triable issues of material fact regarding whether Wawrzenski subjectively believed the harassment and discrimination she experienced were actionable and unlawful.

49

On the objective component, there was evidence Wawrzenski told Nakasone that Gallo's comments to her about her uniform were "sexist" and that she was subject to greater "scrutiny" than male flight attendants. She told Serrano-Cobo that making her change uniforms when the one she was wearing was compliant was also "sexist." Wawrzenski told Nunn that United's "unequal treatment between males and females" regarding uniform compliance was "sexist" and "completely unfair" and that she "was being discriminated and harassed in the workplace." Finally, Wawrzenski complained to Mark and Serrano-Cobo during the July 2, 2020 investigation meeting, and in her written report following that meeting, about harassment and discrimination. According to her statement, Wawrzenski asked during the meeting, "If I was a male in my swimwear would you be calling a meeting and holding an investigation," which suggested disparate enforcement of the social media policy. And at the meeting she "reiterated" she was "being targeted based off solely [her] looks and being a female which is sexist and discriminatory." This evidence created triable issues of material fact regarding whether Wawrzenski's belief United engaged in prohibited employment practices was objectively reasonable.

United argues that "Wawrzenski never submitted a formal complaint through any of United's official channels . . . until after her investigatory meeting" and that her complaints were "too vague to constitute protected activity." But the law does not require Wawrzenski to submit a formal complaint; bringing her concerns to her manager on multiple occasions was enough. (See *Castro-Ramirez v. Dependable Highway Express, Inc.*, *supra*, 2 Cal.App.5th at p. 1048 [plaintiff's repeated oral complaints to his supervisors about a change in his scheduling, when everyone

50

knew he needed earlier hours to help care for his disabled son, "showed opposition to a practice he believed was unlawful"]; see also *Yanowitz*, *supra*, 36 Cal.4th at p. 1047 [trier of fact could find the plaintiff's repeated refusal to comply with a discriminatory order "sufficiently conveyed" to her manager that she considered the order unlawful].) And the articulation of her concerns were quite detailed. For example, Wawrzenski told Nunn about numerous specific events where she endured unwelcome comments about her body, including from other managers who falsely accused her of not complying with the uniform policy. And her written statement following the July 2, 2020 investigatory meeting explained the basis of her complaint of disparate treatment.

> 2. *Wawrzenski Created a Triable Issue of Material Fact Regarding Whether Her Termination Was Causally Linked to Her Complaints*

"Because the employee's burden of establishing a prima facie case under *McDonnell Douglas* is fairly minimal, the temporal proximity between an employee's [complaint] and a subsequent termination may satisfy the causation requirement." (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 353; see *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 990.) "A causal link may be established with evidence demonstrating that the employer was aware of the protected activity and the adverse action followed within a relatively short time." (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018; see *Morgan v. Regents of University of California* (2000)

51

88 Cal.App.4th 52, 69-70; *Day v. Sears Holdings Corp.* (C.D.Cal. 2013) 930 F.Supp.2d 1146, 1180-1181.)

Wawrzenski submitted evidence she complained to Nunn about United's enforcement of its uniform policy and the harassing comments at least three times between December 2019 and May 2020. She made similar complaints and complained about United's disparate enforcement of its social media policy on July 2, 2020 to Mark, who had ultimate decisionmaking authority regarding whether to terminate Wawrzenski's employment. And Mark fired Wawrzenski on July 17, 2020, just two weeks after Wawrzenski memorialized her complaints in the statement she drafted following the investigatory meeting. This evidence created an inference of retaliatory motive. (See *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468 [gaps of three to eight months between the plaintiff's protected conduct and the employer's alleged retaliation supported an inference of causation]; *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1492 [gap of several months constituted "relatively close timing"]; *Flores v. City of Westminster* (9th Cir. 2017) 873 F.3d 739, 750 ["'[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation'"].)

United argues that, because Wawrzenski made "the bulk of her purported complaints" between 2015 and early 2019, there is no temporal proximity between her complaints and her termination. United's argument, however, leaves out a few complaints, and in particular those Wawrzenski made to Nunn in 2019 and 2020 and to Mark and Serrano-Cobo in July 2020. And the case United relies on for the proposition that the complaints Wawrzenski made during disciplinary proceedings cannot be the

basis for a retaliatory motive because United had already planned to take an adverse employment action against her, *Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, is distinguishable. The United States Supreme Court stated in *Clark*: "Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." But in *Clark* the employer did not learn of the plaintiff's complaint until after the alleged adverse employment decision had been made. (See *ibid.*) Here, Wawrzenski made her last complaints on July 2, 2020, and United did not terminate her employment until July 17, 2020. There is also no evidence, as United suggests, Wawrzenski, "fearing" her job was "on the line," raised "an old wound as a preemptive strike to escape appropriate discipline or discharge." (*Arteaga v. Brink's, Inc.*, *supra*, 163 Cal.App.4th at p. 354.) Indeed, she raised both old wounds and new wounds on July 2, 2020, and United points to no evidence she did so to escape discipline for violating the social media policy.

3.     *Wawrzenski Created a Triable Issue of Material Fact Regarding Whether United's Stated Reasons for Her Termination Were Pretextual*

"[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." (*Arteaga v. Brink's, Inc.*, *supra*, 163 Cal.App.4th at p. 353; see *Yphantides v. County of San Diego* (S.D.Cal. 2023) 660 F.Supp.3d 935, 961.) As the court in *Arteaga* explained, "'Employers are

53

sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace. . . . Precedent does not prevent [an employer] from removing such an employee simply because the employee [recently] engaged in a protected work activity.'" (*Arteaga*, at p. 354, brackets in original.) Perhaps, but where additional circumstantial evidence suggests an impermissible factor was a substantial reason for an adverse employment action, an employee can show an inference of pretext. (See *Harris*, *supra*, 56 Cal.4th at pp. 215-217 [where there is evidence from which a trier of fact could conclude the employer's action was caused by unlawful discrimination, and also evidence that it was caused by nondiscriminatory motivations, the plaintiff must prove "discrimination was a 'substantial factor' in the decision"]; *Department of Corrections & Rehabilitation v. State Personnel Bd.*, *supra*, 74 Cal.App.5th at p. 925 [same].)

As discussed in the context of Wawrzenski's cause of action for discrimination, Wawrzenski submitted sufficient circumstantial evidence to create a triable issue of material fact regarding whether United's stated reasons for terminating Wawrzenski were pretextual. From that evidence, a reasonable trier of fact could find that, even if Wawrzenski's Instagram account with its link to a subscription-based OnlyFans page violated United's social media policy, United retaliated against Wawrzenski by terminating her employment after she complained about the disparate enforcement of that policy between men and women.

E.    *The Trial Court Erred in Granting United's Motion for Summary Adjudication on Wawrzenski's Cause of Action for Failure To Prevent Discrimination, Harassment, and Retaliation Under FEHA*

The trial court granted United's motion for summary adjudication on Wawrzenski's cause of action for failure to prevent discrimination, harassment, and retaliation under FEHA because the court ruled there were no triable issues of fact on the underlying causes of action. Because we reverse that ruling on the underlying causes of action, and because United identifies no other reason for affirming the trial court's order, we also reverse the order granting United's motion for summary adjudication on Wawrzenski's failure-to-prevent cause of action.

F.    *Wawrzenski Has Not Shown the Trial Court Erred in Granting United's Motion for Summary Adjudication on Her Causes of Action for Whistleblower Retaliation, Wrongful Termination, and Intentional Infliction of Emotional Distress*

United argued in its motion for summary judgment the Railway Labor Act (45 U.S.C. § 151 et seq.) (RLA), which regulates labor relations in the airline industry,[14] preempted Wawrzenski's causes of action for whistleblower retaliation under Labor Code section 1102.5, wrongful termination, and intentional infliction of emotional distress. Without analysis, the trial court

---

[14]    See *Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 742 ("the Railway Labor Act [is] a federal statute governing labor relations in the railroad and airline industries"); *Godfrey v. Oakland Port Services Corp.* (2014) 230 Cal.App.4th 1267, 1277, fn. 8 (same).

55

ruled, in the appendix to its statement of decision, the RLA preempted each of those causes of action.

Wawrzenski did not argue in her opening brief the trial court erred in granting United's motion for summary adjudication on her causes of action for whistleblower retaliation, wrongful termination, and intentional infliction of emotional distress on the ground of preemption. In its respondent's brief, United highlighted this omission and argued Wawrzenski failed to demonstrate the trial court erred in ruling for United on those claims. United did not make any other argument regarding preemption under the RLA.

In her reply brief Wawrzenski argued for the first time the RLA does not preempt her causes of action for whistleblower retaliation, wrongful termination, and intentional infliction of emotional distress. But her argument comes too late. "'Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported'" in the plaintiff's opening brief. (*Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1271, fn. 5; see *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295].) "Basic notions of fairness dictate that we decline to entertain arguments that a party has chosen to withhold until the filing of its reply brief, because this deprives the respondent of the opportunity to address them on appeal." (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 693; accord, *People ex rel. Gascon v. HomeAdvisor, Inc.* (2020) 49 Cal.App.5th 1073, 1086.) As United argues, Wawrzenski, as the appellant, has the responsibility to demonstrate the trial court's ruling was erroneous. (*Ramirez v. City of Gardena* (2017) 14 Cal.App.5th 811, 817; see *Nealy v. City of Santa Monica* (2015)

234 Cal.App.4th 359, 372 ["'[a]s with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error'" in an appeal from an order granting summary judgment].)

Wawrzenski contends she did not have to challenge the trial court's ruling under the RLA because "the trial court's order offered no analysis of this issue." That's not how it works. The trial court did not have to provide analysis; the court only had to "specify the reasons for its determination," which it did, ruling the RLA preempted Wawrzenski's causes of action for whistleblower retaliation, wrongful termination, and intentional infliction of emotional distress. (See Code Civ. Proc., § 437c, subd. (g).) The trial court's lack of analysis may have made its ruling more vulnerable to attack on appeal, but only if Wawrzenski made that attack in her opening brief, which she didn't. Wawrzenski forfeited any argument the RLA does not preempt her causes of action for whistleblower retaliation, wrongful termination, and intentional infliction of emotional distress.[15]

---

[15]     We express no view on the correctness of the trial court's ruling.

G.  *Wawrzenski Has Not Shown the Trial Court Erred in Granting United's Motion for Summary Adjudication on Her Claim for Punitive Damages*

1.  *Applicable Law*

A plaintiff may recover punitive damages for violations of FEHA "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294; see *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 215 [punitive damages are available for FEHA violations].)  Under Civil Code section 3294, subdivision (b), "punitive damages can properly be awarded against a corporate entity as a principal, because of an act by its agents, if the corporate employer authorized or ratified wrongful conduct.  Ratification is shown if an officer, director, or managing agent of the corporation has advance knowledge of, but consciously disregards, authorizes, or ratifies an act of oppression, fraud, or malice." (*Pulte Home Corp. v. American Safety Indemnity Co.* (2017) 14 Cal.App.5th 1086, 1124.)  The parties agree that no officer or director of United authorized or ratified the alleged discrimination, harassment, retaliation, or failure to prevent such conduct.  They disagree, however, on whether a managing agent did.

"The term 'managing agent' includes 'only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy.'" (*Tilkey v. Allstate Ins. Co.* (2020) 56 Cal.App.5th 521, 554; see *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 566-567.)  The status "does not depend on the person's level within the corporate hierarchy

58

but instead the amount of discretion permitted in making decisions. [Citation.] Moreover, a managing agent does not need to be a corporate policymaker and can formulate operational policies through discretionary decisions." (*Tilkey*, at p. 554; see *Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442, 452-453.) "The scope of an employee's discretion and authority is a question of fact." (*Tilkey*, at p. 554; see *Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 366.)

> 2. *Wawrzenski Has Not Cited Evidence To Show a Managing Agent Authorized or Ratified the Alleged Misconduct*

United argued in its motion for summary judgment that "those involved in the investigation into [Wawrzenski's social media] and the decision to terminate her employment lacked the requisite authority to constitute United . . . managing agents." In her opposition to the motion, Wawrzenski claimed United failed to include "all the decision makers," leaving out two executives Wawrzenski alleged created corporate policy and oversaw base operations. Wawrzenski, however, cited no evidence to support her claim those executives had those responsibilities or participated in the decision to investigate or terminate her employment.

The trial court granted United's motion for summary adjudication on Wawrzenski's claim for punitive damages because the court granted the motion for summary adjudication on all of Wawrzenski's causes of action. Wawrzenski suggests we reverse that ruling if we reverse the order granting United's motion for summary adjudication on any cause of action and argues she raised a triable issue of material fact regarding

59

whether she can recover punitive damages because her evidence showed United "intentionally discriminated" against her. But United argued, among other things, "those involved in the decision to terminate Wawrzenski's employment lacked the requisite authority to constitute officers, directors, or managing agents of United." United provided numerous citations to evidence identifying the job duties and responsibilities—including the scope of policymaking authority—for each person United contends was involved in the decision to investigate Wawrzenski's conduct and terminate her employment. That evidence included official job descriptions and deposition testimony of Mark, Nunn, Nakasone, Perez, Serrano-Cobo, Cavanagh, and two other individuals on the management team Mark consulted before terminating Wawrzenski's employment. Based on that evidence, United argues "neither [those individuals'] management status nor authority to hire and fire employees renders any of them a . . . managing agent."

In her reply brief Wawrzenski argues there are triable issues of material fact regarding whether "the key decisionmakers" were managing agents. She rightly states United, as the moving party, had the initial burden to produce sufficient evidence those individuals were not managing agents. But she then incorrectly contends United "point[ed] to evidence which simply restated what it believed to be the applicable legal standard for the determination of whether these individuals were its managing agent." As stated, United's evidence consisted of detailed job descriptions and deposition testimony about the individuals' job responsibilities and the scope of their authority. Wawrzenski cites no evidence that would counter United's evidence or create a factual issue, nor does she identify who she

contends the decisionmakers were and the scope of their authority. By failing to cite evidence to support her assertion regarding whether "the key decisionmakers" were managing agents, Wawrzenski forfeited the argument. (See *Audish v. Macias* (2024) 102 Cal.App.5th 740, 751; *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597; *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 895; see also Cal. Rules of Court, rule 8.204(a)(C) [appellate briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting United's motion for summary judgment. The trial court is directed to enter a new order (1) granting United's motion for summary adjudication on Wawrzenski's causes of action for whistleblower retaliation under Labor Code section 1102.5, wrongful termination, and intentional infliction of emotional distress, and on Wawrzenski's claim for punitive damages; (2) denying United's motion for summary adjudication on Wawrzenski's causes of action for discrimination, harassment, retaliation under FEHA, and failure to prevent such conduct; and

(3) denying United's motion for summary judgment.  Wawrzenski is to recover her costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ALEXA WAWRZENSKI, | B327940 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV43930) |
| v. | |
| UNITED AIRLINES, INC., | ORDER MODIFYING OPINION AND CERTIFYING FOR PARTIAL PUBLICATION (No change in appellate judgment) |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on October 22, 2024 be modified as follows:

1.      The entire Introduction is deleted and the following is inserted in its place.

## INTRODUCTION

Alexa Wawrzenski was a flight attendant employed by United Airlines, Inc.  United investigated and ultimately fired her for having a social media account featuring pictures of herself in uniform and wearing a bikini, with a link to a subscription-based account advertised as providing "[e]xclusive private

---

[*]      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts F and G of the Discussion.

content you won't see anywh[ere else]."  Wawrzenski sued United, alleging that she endured years of gender discrimination and harassment, that United retaliated against her for complaining about the discrimination and harassment by terminating her employment, that United's investigation into her social media and her termination discriminated against her as a woman, that United failed to prevent its employees' misconduct, and that United intentionally caused Wawrzenski emotional distress.

United moved for summary judgment or in the alternative for summary adjudication on all causes of action and on Wawrzenski's claim for punitive damages.  The trial court granted United's motion in its entirety, and Wawrzenski appealed from the ensuing judgment.

In the published portion of this opinion we conclude the trial court erred in granting United's motion for summary adjudication on Wawrzenski's causes of action under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA)).[1]  In particular, we conclude Wawrzenski met her burden to make a prima facie case of gender discrimination and to show pretext, in part with evidence United treated more favorably three male employees who had social media accounts featuring pictures of themselves in uniform and partially undressed.  In rejecting this "comparator" evidence, the trial court usurped the role of the factfinder to determine whether the comparators were similarly situated to Wawrzenski to show discriminatory animus and pretext.  We also conclude the trial court erred in failing to apply the continuing violation doctrine to Wawrzenski's cause of action for hostile work environment harassment.  Because Wawrzenski submitted evidence showing United's actions inside and outside the limitations period were sufficiently similar in kind and occurred with sufficient

---

[1]  Undesignated statutory references are to the Government Code.

2

frequency, Wawrzenski was entitled to rely on evidence of harassment occurring outside the limitations period. Wawrzenski also created a triable issue of material fact regarding whether she was subjected to sufficiently severe or pervasive harassment under the low bar of recently enacted section 12923.

Finally, we conclude the trial court erred in granting United's motion for summary adjudication on Wawrzenski's cause of action for retaliation under FEHA for failing to show a causal connection between protected activity and United's decision to terminate Wawrzenski's employment. Wawrzenski created a triable issue of material fact with evidence United fired her shortly after she complained to managers and in writing about United's disparate enforcement of its uniform and social media policies.

In the unpublished portion of this opinion we conclude Wawrzenski forfeited her challenge to the trial court's rulings on her causes of action for retaliation under Labor Code section 1102.5, wrongful termination in violation of public policy, and intentional infliction of emotional distress by not challenging one of the grounds for those rulings. And we conclude Wawrzenski forfeited her argument the trial court erred in granting United's motion for summary adjudication on her claim for punitive damages by failing to cite any evidence in support of her contentions on appeal.

Therefore, we reverse the judgment and the order granting United's motion for summary judgment. We direct the court to enter a new order denying United's motion for summary judgment, denying United's motion for adjudication on Wawrzenski's causes of action under FEHA, and granting the motion on her other causes of action and her claim for punitive damages.

3

2.     At the beginning of the last paragraph on page 37, after the full citation to *Beltran*, delete the words "Supreme Court" and insert "court" so that the sentence reads:

> But the court in *Beltran* recognized section 12923 did address "how the trial courts were to apply that law, particularly and specifically in the context of summary judgment."

The opinion in the above-entitled matter filed on October 22, 2024 was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and the opinion is ordered certified for publication with the exception of parts F and G of the Discussion.

_____

MARTINEZ, P. J.          SEGAL, J.          FEUER, J.

4